FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

FEB 05 2026

BY
DEPUTY_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 1:25-CR-00038 |
| | § | JUDGE CRONE |
| DAVID DRAKE aka RILEY GRAHAM (1), | § | |
| BROOKE CRAWFORD (2), | § | |
| MARK DAY (3), | § | |
| RIAN GRAHAM (4), | § | |
| TROI GRAHAM (5), | § | |
| ███████████████ | § | |
| | § | |
| | § | |

**FIRST SUPERSEDING INDICTMENT**

THE UNITED STATES GRAND JURY CHARGES:

**General Allegations**

At all times relevant to this Indictment:

1.     Mobiloil Federal Credit Union (MFCU) now known as Rave Financial is a "financial institution," as defined by Title 18, United States Code, Section 20.

2.     PenFed Credit Union (PFCU) is a "financial institution," as defined by Title 18, United States Code, Section 20.

3.     Neches Federal Credit Union (NFCU) is a "financial institution," as defined by Title 18, United States Code, Section 20.

4.     Discover Card (DC) is a "financial institution," as defined by Title 18, United States Code, Section 20.

Indictment – Page 1

5.      Capital One is a "financial institution," as defined by Title 18, United States Code, Section 20.

6.      Chase Bank (CB) is a "financial institution," as defined by Title 18, United States Code, Section 20.

7.      Chase Credit Card (CCC) is a "financial institution," as defined by Title 18, United States Code, Section 20.

8.      Synchrony Sam's Club Credit Card (SSCCC) is a "financial institution," as defined by Title 18, United States Code, Section 20.

9.      Shop Your Way Citi Card (SYWCC) is a "financial institution," as defined by Title 18, United States Code, Section 20.

10.     Neches Federal Credit Union Credit Card (NFCUCC) is a "financial institution," as defined by Title 18, United States Code, Section 20.

11.     Chase Amazon Credit Card (CACC) is a "financial institution," as defined by Title 18, United States Code, Section 20.

12.     Fifth Third Bank is a "financial institution," as defined by Title 18, United States Code, Section 20.

13.     Wells Fargo Bank is a "financial institution," as defined by Title 18, United States Code, Section 20.

14.     The Mildred Drake Family Trust (MDFT) is promoted as a conglomeration of family-owned and operated businesses that was officially formed in 1998. MDFT advertised itself as a vast financial growth trust with a network of shipping vessels, minerals, real estate, oil and natural gas deposits, technological advancements,

and financial services companies. The trust has developed partnerships throughout North America, South America, Asia, Africa, and the Caribbean.

15.    Carolina's Contracting LLC (CC LLC) is a construction site preparation contractor that operated in North and South Carolina providing services including land development such as clearing and grading, as well as installing wet public utilities in residential sub-developments and commercial land projects. CC LLC was formed in 2013 and is owned by J.S. and L.M.

16.    The United States Small Business Administration (SBA) is an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses.  The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

17.    As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders.  These loans have government-backed guarantees.

18.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

19.    The Economic Injury Disaster Loan Program ("EIDL") was a COVID-19 pandemic relief program administered by the SBA that provided loans to small businesses for job retention and certain other expenses.  EIDL loans were intended to

Indictment – Page 3

cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. EIDL loans are processed outside the State of Texas. According to the SBA website (www.sba.gov), the stated purpose of an EIDL loan is "[t]o meet financial obligations and operating expenses that could have been met had the disaster not occurred." EIDL loans are low interest loans and are not forgivable.

20.    To obtain an EIDL loan, a qualifying business had to submit an EIDL application, which was signed by an authorized representative of the business. The EIDL application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the EIDL, including that the business was in operation and needed the funds for working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020, and continuing thereafter. For a business to be eligible for an EIDL, the business must have been in operation before February 1, 2020.

21.    EIDL applications were submitted directly to the SBA and processed by the agency with support from a government contractor, Rapid Finance. EIDL applications were received by SBA servers located in Virginia, Iowa, or Washington. Once approved, the individual or business received the EIDL proceeds via an electronic funds transfer to a financial account under the control of the business.

22.    The amount of the loan, if an application was approved, was determined based on the information provided by the applicant about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL advance were

issued directly by the SBA. EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

## COUNT 1

Violation: 18 U.S.C. § 1349
(Conspiracy to Commit Bank
Fraud and Wire Fraud)

23.    The General Allegations section of this First Superseding Indictment is realleged and incorporated by reference as though fully set forth herein.

24.    From in or about June 2019, and continuing through in or about October 2024, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas, and elsewhere, the defendants, **David Drake aka Riley Graham (Drake), Brooke Crawford (Crawford), Mark Day (Day), Rian Graham (R. Graham), Troi Graham (T. Graham),** ███████████████████████████████████ along with others both known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree to violate 18 U.S.C. § 1344, bank fraud, that is to execute and attempt to execute a scheme and artifice to obtain money, funds, assets, securities, and other property owned by and under the custody and control of an insured financial institution by means of materially false and fraudulent pretenses, representations, and promises and to violate 18 U.S.C. § 1343, wire fraud, that is to knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce any writings, signs, signals, pictures, and sounds by means of false and fraudulent pretenses, representations, and promises for the purpose of executing such scheme or artifice.

### Purpose of the Conspiracy

25.    It was the general purpose of the conspiracy for the conspirators to unlawfully obtain money through unauthorized transfers of funds from financial institutions and to unlawfully obtain money and property through unauthorized wire transactions from financial institutions.

### Manner and Means of the Conspiracy

26.    The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

27.    The conspirators advertised MDFT as an investment opportunity with a vast financial growth trust with a network of shipping vessels, minerals, real estate, oil and natural gas deposits, technological advancements, and financial services companies in which the victims could invest money.

28.    The conspirators devised and carried out a scheme to obtain money and property by means of false and fraudulent pretenses, representations, and promises affecting a financial institution.

29.    The conspirators devised and carried out a scheme to obtain money and property by means of false and fraudulent pretenses, representations, and promises by conducting wire transaction affecting a financial institution.

30.    **Crawford** and **Day** would make an investment opportunity presentation to potential investors at a local restaurant and residence. **Crawford** and **Day** claimed that the investors would utilize MDFT to obtain a line of credit to build resorts in the

Bahamas, Jamaica, and Mexico. The investor would have to obtain a loan and credit card and provide the proceeds to **Crawford**.

31.     **Drake, Crawford,** and **Day,** negotiated to purchase CC LLC from J.S. and L.M. for $10,000,000. **Drake, Crawford,** and **Day,** promised to pay J.S. and L.M. $50,000 within three days of the sale, $6,950.000 in 20 days of the purchase agreement, and $3,000,000 within one year.

32.     **Crawford** and other co-conspirators would utilize the proceeds of the loans, credit cards, and company proceeds for personal expenses, business ventures, and to pay off other victims.

### Overt Acts

33.     In furtherance of the conspiracy and to achieve its objects and purpose, the following overt acts, among others, were committed in the Eastern District of Texas and elsewhere:

34.     On or about April 23, 2019, **Crawford** opened an account at CB that was titled Drake Human Resources Company, LLC (DHRC), Account No. #####7220.

35.     On or about July 16, 2019, SM applied for and obtained a loan for $20,000 from PFCU.  PFCU issued a cashier's check for the loan amount to S.M. S.M. deposited the $20,000 cashier's check in G.M.'s MFCU #####1185 account.

36.     On or about July 19, 2019, G.M. applied for and obtained a loan for $100,000.00 from MFCU.  The loan amount was deposited into G.M.'s MFCU's #####1185 account.

37.     On or about July 24, 2019, G.M. wired $120,000 to DHRC's

Chase Account #####7220 as an investment into the MDFT.

38.     On or about July 27, 2019, S.M. transferred her Synchrony Sam's Club Credit Card to **Crawford** as part of SM's investment portfolio into MDFT.

39.     On or about August 2019, G.M. transferred his Shop Your Way Citi Credit Card to **Crawford** as part of G.M.'s investment portfolio into MDFT.

40.     On August 6, 2019, G.M. transferred a Discover Card to **Crawford** as part of G.M.'s investment portfolio into MDFT.

41.     On or about August 12, 2019, G.M. applied for and obtained a loan for $10,000 from MFCU. On August 15, 2019, G.M. wired $10,000 to **Crawford's** Chase Account #####7220 as part of G.M.'s investment portfolio.

42.     On or about August 12, 2019, G.M. transferred his NFCU Credit Card to **Crawford** as part of GM's investment portfolio.

43.     On or about August 13, 2019, G.M. applied for and obtained a loan for $20,000 from PFCU. On August 21, 2019, G.M. wired $20,000 to **Crawford's** Chase Account #####7220 as part of G.M.'s investment portfolio.

44.     On or about August 13, 2019, G.M. applied for and obtained a loan for $10,000 from NFCU. On August 15, 2019, G.M. wired $10,000 to **Crawford's** Chase Account #####7220 as part of G.M.'s investment portfolio.

45.     On or about August 21, 2019, G.M. provided **Crawford** his Chase Amazon Credit Card as part of G.M.'s investment portfolio.

46.     On or about September 21, 2019, G.M. opened a CCC and provided the credit card to **Crawford** as part of G.M.'s investment portfolio.

47.    The proceeds from the loans and credit cards were utilized by **Crawford** and co-conspirators for personal and business purposes.

48.    On or about June 19, 2020, **T. Graham** wired or caused to be wired EIDL application *******8006, to the SBA for approval knowing information on the application was false. The EIDL application was for the benefit of Lionsgate Consulting Company.  G.M.'s personal identification information was used to obtain this loan without G.M.'s consent or knowledge.  EIDL application ******8006 resulted in a deposit of $128,900 into Fifth Third Bank account #######6689. This account belonged to **T. Graham**

49.    On or about June 26, 2020, **R. Graham** wired or caused to be wired EIDL application ******8109, to the SBA for approval knowing information on the application was false. The EIDL application was for the benefit of Essential Solutions and Consulting.  S.M.'s personal identification information was used to obtain this loan without S.M.'s consent or knowledge.  EIDL application *******8109 resulted in a deposit of $105,500.00 into Wells Fargo account #######8543. This account belonged to **R. Graham.**

50.    On March 10, 2024, Carolina Construction Holding Company (CCHC), a MDFT subsidiary signed a purchase agreement to purchase CC LLC for $10,000.000. CCHC agreed to pay a $50,000 earnest money payment within three days of the execution of the contract, $6,950,000 in cash payable upon closing via wire transfer, and a promissory note for $3,000.000 with 7% interest payable one year after the date of

closing. The closing would occur within 20 days of the signing of the purchase agreement.

51.     On March 10, 2024, MDFT directed a "merger" between CC LLC and D&D Maritime USA, Inc. (D&D). The merger agreement indicated CC LLC would receive $4 billion in real estate from the merger.

52.     On April 16, 2024, CC LLC wired $100,000 to Mildred Drake Corporation's (MDC) account, an account controlled by ▆▆. On April 17, 2024, ▆▆ wired $35,000 to **Day**. On April 18, 2024, **Day** wired $25,000 to G.M.

53.     On April 30, 2024, CC LLC obtained a loan from Katamata Capital Group in the amount of $289,763.50.

54.     On May 1, 2024, $289,700 was wired from CC LLC to MDC. On the same day, ▆▆ wired $250,000 to G.H.M and $5,055 to **Day.** On May 6, 2024, **Day** wired $5,000 to G.M.

55.     On May 16, 2024, CC LLC wired $35,000 to MDC. Total wire transfers to ▆▆ were approximately $424,700. This money was then disbursed to various bank accounts held by **Crawford, Day**, and other individuals/entities. After the money was moved into these other accounts, some of the respective account holders moved it further to other members of MDFT.

All in violation of 18 U.S.C. § 1349.

## COUNTS 2 – 6

Violation:  18 U.S.C. §§ 1344<br>
(Bank Fraud)

56.    The General Allegations section of this First Superseding Indictment is realleged and incorporated by reference as though fully set forth herein.

57.    From in or about July 2019, and continuing up to August 2019, in the Eastern District of Texas and elsewhere, **Drake, Crawford, Day,** and **R. Graham** knowingly executed a scheme or artifice to defraud a financial institution, that **Drake, Crawford, Day** and **R. Graham** had the intent to defraud a financial institution, that the scheme or artifice to defraud employed false material representations, and concealed a material fact, and that **Drake, Crawford, Day,** and **R. Graham** placed the financial institution at risk of civil liability and financial loss.

### Purpose of the Scheme and Artifice

58.    It was the purpose of the scheme and artifice for **Drake, Crawford, Day,** and **R. Graham** to unlawfully and unjustly enrich themselves by obtaining money from G.M. and S.M. by means of false and fraudulent pretenses, representations, and promises having G.M. and S.M. apply for a loan or credit card from a financial institution after making fraudulent pretenses, representation, and promises to G.M. and S.M.

### The Scheme and Artifice

59.    The manner and means by which the defendants sought to accomplish the purpose of the scheme and artifice includes, among others, the following:

60.    G.M. and S.M. would apply for a loan and credit card from a financial

institution.

61.    The financial institution would approve the loan or extended credit to G.M. and S.M.

62.    Once the loan or credit card was approved, G.M. and S.M. would transfer the loan proceeds and credit card information to **Crawford** to invest in MDFT.

63.    Once the transfer was made to **Crawford**, she would distribute the proceeds to the conspirators who would utilize the loan proceeds and credit for personal affairs and business ventures.

### Acts in Execution of the Scheme and Artifice

64.    On or about the dates specified as to each count below, in the Eastern District of Texas and elsewhere, for the purpose of executing and attempting to execute the above-described scheme and artifice to obtain money, funds, assets, securities, and other property owned by and under the custody and control of an insured financial institution by means of materially false and fraudulent pretenses, representations, and promises, the defendants, **Drake, Crawford, Day**, and **R. Graham** knowingly caused G.M. and S.M. to apply for a loan with the financial institution listed below in the amounts specified as to each count below:

| Count | Date | Victim | Amount | Description |
|---|---|---|---|---|
| 2 | July 16, 2019 | S.M. | $20,000 | Loan at PFCU. |
| 3 | July 19, 2019 | G.M. | $100,000 | Loan at MFCU. |
| 4 | August 13, 2019 | G.M. | $20,000 | Loan at PFCU. |
| 5 | August 12, 2019 | G.M. | $10,000 | Loan at MFCU. |
| 6 | August 13, 2019 | G.M. | $10,000 | Loan at NFCU. |

All in violation of 18 U.S.C. §§ 1344 and 2.

## COUNTS 7 – 13

Violation:  18 U.S.C. §§ 1343
(Wire Fraud)

65.    The General Allegations section of this First Superseding Indictment is realleged and incorporated by reference as though fully set forth herein.

66.    From on or about July 2019, and continuing through on or about October 2024, in the Eastern District of Texas and elsewhere, the defendants **Brooke Crawford (Crawford)** and **Rian Graham (R. Graham)**, knowingly devised and intended to devise a scheme and artifice to defraud unjustly to enrich themselves by obtaining money and property from G.M. and S.M.'s credit cards, financial institutions, that the scheme to defraud employed false material representations, pretenses, and promises, that the defendants transmitted and caused to be transmitted by means of wire, radio, and television communications in interstate commerce, any writing, sign, signal, picture, sound for the purpose of executing such scheme and the defendants acted with a specific intent to defraud.

### Purpose of the Scheme and Artifice

67.    It was the purpose of the scheme and artifice for **Crawford** and **R. Graham** to unlawfully and unjustly enrich themselves by obtaining money from G.M. and S.M. by means of false and fraudulent pretenses, representations, and promises.

### The Scheme and Artifice

68.    The manner and means by which the defendants sought to accomplish the purpose of the scheme and artifice includes, among others, the following:

Indictment – Page 13

69.    G.M. and S.M. applied for a credit card from a financial institution.

70.    The financial institution would approve a credit card for G.M. and SM.

71.    Once the credit card was approved, G.M. and S.M. would transfer the credit card information to **Crawford** to invest into MDFT.

72.    Once the transfer was made, **Crawford** and **R. Graham** would utilize the loan proceeds and credit for personal affairs and business ventures.

### Acts in Execution of the Scheme and Artifice

73.    From on or about the dates specified below as to each count set forth below, in the Eastern District of Texas and elsewhere, for the purpose of executing and attempting to execute the described scheme and artifice to defraud G.M. and S.M. and unlawfully obtain money and property by means of false and fraudulent pretenses, representations, and promises, the defendants, **Crawford** and **R. Graham,** knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce the writings, signs, signals, pictures, and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Victim | Purchase amount | Description |
|-------|------|--------|-----------------|-------------|
| 7 | July 27, 2019 | S.M. | $12,219.88 | Synchrony Sam's Club CC |
| 8 | August 6, 2019 | G.M. | $26,593.65 | Discover CC |
| 9 | August 13, 2019 | G.M. | $5,000.00 | Capital One CC |
| 10 | August 12, 2019 | G.M. | $10,743.52 | Shop Your Way Citi Card |
| 11 | August 16, 2019 | G.M. | $5,098.47 | NFCU CC |
| 12 | Augus 21, 2019 | G.M. | $5,851.62 | Chase Amazon CC |
| 13 | September 21, 2019 | G.M. | $15,762.70 | Chase CC |

All in violation of 18 U.S.C. §§ 1343 and 2.

## COUNTS 14 – 15

Violation:  18 U.S.C. §§ 1343
(Wire Fraud)

74.     General Allegations sections 15-21 of this indictment are realleged and incorporated by reference as though fully set forth herein.

75.     From on or about June 2020, in the Eastern District of Texas and elsewhere, the defendants **Troi Graham (T. Graham)** and **Rian Graham (R. Graham)** knowingly devised and intended to devise a scheme and artifice to defraud G.M. and S.M., and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

### Purpose of the Scheme and Artifice

76.     It was the purpose of the scheme and artifice to unlawfully and unjustly enrich themselves by obtaining money from G.M. and S.M. by means of false and fraudulent pretenses, by transmitting an EIDL application to the SBA without G.M. and S.M.'s knowledge or consent.

### The Scheme and Artifice

77.     The manner and means by which the defendants sought to accomplish the purpose of the scheme and artifice include, among others, the following:

78.     The defendants applied for an EIDL using a fraudulent business.

79.     The defendants utilized G.M. and S.M.'s personal identifying information to qualify for the EIDL funds.

## Acts in Execution of the Scheme and Artifice

80.    From on or about the dates specified below as to each count set forth

below, in the Eastern District of Texas and elsewhere, for the purpose of executing and

attempting to execute the described scheme and artifice to defraud G.M. and S.M. and

unlawfully obtain money by means of false and fraudulent pretenses, representations, and

promises, the defendants, knowingly transmitted and caused to be transmitted by means

of wire communication in interstate commerce the writings, signs, signals, pictures, and

sounds described below for each count, each transmission constituting a separate count:

| Count | Defendant | Date | Victim | Description of Wire |
|-------|-----------|------|--------|---------------------|
| 14 | T. Graham | June 19, 2020 | G.M. | EIDL *******8006 for $128,900. |
| 15 | R. Graham | June 26, 2020 | S.M. | EIDL *******9109 for $105,000. |

All in violation of 18 U.S.C. § 1343.

## COUNTS 16 – 17

Violation:  18 U.S.C. §§ 1343 & 2
(Wire Fraud)

81.    The General Allegations section of this First Superseding Indictment is

realleged and incorporated by reference as though fully set forth herein.

82.    From on or about December 2023, and continuing through on or about

May 2024, in the Eastern District of Texas and elsewhere, the defendants as listed in the

chart below, knowingly devised and intended to devise a scheme and artifice to defraud

unjustly to enrich themselves by obtaining money and property from CC LLC, a North

Carolina Corporation, that the scheme to defraud employed false material representations,

pretenses, and promises, that the defendants transmitted and caused to be transmitted by

means of wire, radio, and television communications in interstate commerce, any writing, sign, signal, picture, sound for the purpose of executing such scheme and the defendants acted with a specific intent to defraud.

### Purpose of the Scheme and Artifice

83.     It was the purpose of the scheme and artifice for **David Drake aka Riley Graham (Drake), Brooke Crawford (Crawford), Mark Day (Day),** and ▓▓▓▓▓▓▓ ▓▓▓▓ to unlawfully and unjustly enrich themselves by obtaining money from CC LLC by means of false and fraudulent pretenses, representations, and promises.

### The Scheme and Artifice

84.     The manner and means by which the defendants sought to accomplish the purpose of the scheme and artifice includes, among others, the following:

85.     **Drake** emailed J.S. and L.M. a merger agreement to merge CC LLC with D&D Maritime USA which made materially false pretenses, representations and promises to J.S. and LM. to convince J.S. and L.M. to sell CC LLC to MDFT.

86.     Once J.S. and L.M. agreed to sell CC LLC to MDFT, **Drake, Crawford, Day,** and ▓▓▓▓ would utilize CC LLC proceeds for personal affairs and business ventures.

### Acts in Execution of the Scheme and Artifice

87.     From on or about the dates specified below as to each count set forth below, in the Eastern District of Texas and elsewhere, for the purpose of executing and attempting to execute the described scheme and artifice to defraud J.S. and L.M. and unlawfully obtain money and property by means of false and fraudulent pretenses,

representations, and promises, the defendants, **Drake, Crawford, Day,** and ▓▓▓ knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce the writings, signs, signals, pictures, and sounds described below for each count, each transmission constituting a separate count:

| Count | Defendant | Date | Description of Wire Transaction |
|---|---|---|---|
| 16 | **Drake, Crawford, Day,** and ▓▓ | March 11, 2024 | **Drake** emailed J.S. and L.M. a merger agreement to merge CC LLC and D&D Maritime USA. |
| 17 | **Drake, Crawford,** and ▓▓ | April 26, 2024 | **Crawford** emailed **Drake** a buy/sell agreement with effective date of sale as November 15, 2022. |

All in violation of 18 U.S.C. §§ 1343 and 2.

## COUNT 18

> Violation:  18 U.S.C. § 1956(h)
> (Conspiracy to Commit Money
> Laundering)

88.    The General Allegations section of this First Superseding Indictment is realleged and incorporated by reference as though fully set forth herein.

89.    From sometime in or around March 2024, and continuing through the date of this First Superseding Indictment, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas and elsewhere, the defendants, **David Drake aka Riley Graham (Drake), Brooke Crawford (Crawford), Mark Day (Day),** ▓▓▓▓ ▓▓▓▓▓▓▓▓▓ did knowingly combine, conspire, confederate, and agree with others, both known and unknown to the Grand Jury, to commit offenses against the United States, to wit:

      a. knowing that the property involved in a financial transaction

          represented the proceeds of some form of unlawful activity, did

          conduct, and attempt to conduct, a financial transaction which, in fact

          involved the proceeds of specified unlawful activity, that is, wire fraud,

          in violation of 18 U.S.C. § 1343, knowing that the transaction was

          designed in whole or in part to conceal and disguise the nature,

          location, source, ownership, and control of the proceeds of specified

          unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and

      b. knowingly engaging and attempting to engage in a monetary

          transaction, in and affecting interstate and foreign commerce, in

          criminally derived property of a value greater than $10,000, such

          property having been derived from a specified unlawful activity within

          the United States, that is, wire fraud, in violation of 18 U.S.C. § 1343.

### **Manner and Means of the Conspiracy**

90.    The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

91.    On March 10, 2024, Carolina Construction Holding Company (CCHC), a MDFT subsidiary signed a purchase agreement to purchase CC LLC for $10,000,000. CCHC agreed to pay a $50,000 earnest money payment within three days of the execution of the contract, $6,950,000 in cash payable upon closing via wire transfer, and a promissory note for $3,000.000 with 7% interest payable one year after the date of

closing. The closing would occur within 20 days of the signing of the purchase agreement.

92.     MDFT directed a "merger" between CC LLC and D&D Maritime USA, Inc. (D&D) on March 10, 2024. The merger agreement indicated CC LLC would receive $4 billion in real estate from the merger.

93.     On April 30, 2024, CC LLC obtained a loan from Katamata Capital Group in the amount of $289,763.50.  On May 1, 2024, CC LLC wired $289,700 to MDC, an account controlled by Sims. An additional $35,000 was wired from CC LLC to MDC's account on May 16, 2024. Total wire transfers to the MDC account were approximately $424,700. This money was then disbursed to various bank accounts held by **Crawford, Day**, and other individuals/entities. After the money was moved into these other accounts, some of the respective account holders moved it further to other members of MDFT.

94.     On April 16, 2024, CC LLC wired $100,000 to ▮▮▮ On April 17, 2024, ▮▮▮ wired $35,000 to **Day**. On April 18, 2024, **Day** wired $25,000 to G.M.

95.     On May 1, 2024, CC LLC wired $289,700 to ▮▮▮ On the same day, ▮▮▮ wired $250,000 to H.M and $5,055.00 to **Day.** On May 6, 2024, **Day** wired $5,000. to GM.

96.     **Crawford** and other co-conspirators would utilize the proceeds of the loans, credit cards, and company proceeds for personal, business ventures, and to pay off other victims.

    All in violation of 18 U.S.C. § 1956(h).

**COUNT 19**

<u>Violation</u>:  18 U.S.C. §§ 1957 & 2
(Money Laundering)

On or about April 18, 2024, in the Eastern District of Texas and elsewhere,

defendants, ████████████ and **Mark Day (Day)**, did knowingly engage and

attempt to engage in a monetary transaction, in and affecting interstate and foreign

commerce, in criminally derived property of a value greater than $10,000, by transferring

$25,000 from **Day's** financial institution to GM's financial institution such property

having been derived from a specified unlawful activity, that is, wire fraud.

All in violation of 18 U.S.C. §§ 1957 and 2.

**NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE**
Pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) and 28 U.S.C. § 2461(c)

97.     The allegations contained in Counts 1 through 19 of this indictment are

realleged and incorporated by reference as though fully set forth herein for the purpose of

alleging forfeiture to the United States of America of certain property in which the

defendants have an interest.

98.     Upon conviction of any violation of 18 U.S.C. § 1349, the defendants,

**Drake, Crawford, Day, R. Graham, T. Graham,** ████████████████████

shall forfeit to the United States any property, real or personal, that constitutes or is

derived from proceeds traceable to a violation of any offense constituting "specified

unlawful activity," or a conspiracy to commit such offense, pursuant to 18 U.S.C. §

981(a)(1)(C) and 28 U.S.C. § 2461(c).

99.     Upon conviction of any violation of 18 U.S.C. §§ 1343 & 1344, the

defendants, **Drake, Crawford, Day, R. Graham, T. Graham** and ▮ shall forfeit to

the United States any property constituting, or derived from, proceeds the person

obtained directly or indirectly, as the result of the violation, pursuant to 18 U.S.C. §

982(a)(2)(A).

100.    Upon conviction of a violation of 18 U.S.C. § 1956(h), the defendants,

**Drake, Crawford, Day, Sims,** ▮▮▮▮▮▮▮▮▮▮▮▮ shall forfeit to the

United States of America, pursuant to 18 U.S.C. § 982(a)(1), any property, real or

personal, involved in such offense and any property traceable to such property.

101.    The property that is subject to forfeiture includes, but is not limited to,

the following:

   a.    All funds subject to forfeiture in bank accounts receiving or
         transferring the fraudulently obtained proceeds; and

   b.    A money judgment from:

         i    **Drake** in the amount of $2,057,676.81 and all interest and
              proceeds traceable thereto, representing the proceeds of the offenses,
              for which the defendants are jointly and severally personally liable.

         ii.   **Crawford** in the amount of $2,057,676.81 and all interest and
              proceeds traceable thereto, representing the proceeds of the offenses,
              for which the defendants are jointly and severally personally liable.

         iii.  **Day** in the amount of $679,676.81 and all interest and
              proceeds traceable thereto, representing the proceeds of the offenses,
              for which the defendants are jointly and severally personally liable.

         iv.   **R. Graham** in the amount of $105,000.00 and all interest and
              proceeds traceable thereto, representing the proceeds of the offenses,
              for which the defendants are jointly and severally personally liable.

> v.    **T. Graham** in the amount of $138,900.00 and all interest and proceeds traceable thereto, representing the proceeds of the offenses, for which the defendants are jointly and severally personally liable.
>
> vi.    ████ in the amount of $438,406.97 and all interest and proceeds traceable thereto, representing the proceeds of the offenses, for which the defendants are jointly and severally personally liable.
>
> vii.    ████████ in the amount of $438,406.97 and all interest and proceeds traceable thereto, representing the proceeds of the offenses, for which the defendants are jointly and severally personally liable.
>
> viii.    ████ in the amount of $438,406.97 and all interest and proceeds traceable thereto, representing the proceeds of the offenses, for which the defendants are jointly and severally personally liable.

102.    Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendants:

   a. Cannot be located upon the exercise of due diligence;

   b. Has been transferred, or sold to, or deposited with a third party;

   c. Has been placed beyond the jurisdiction of the Court;

   d. Has been substantially diminished in value; or

   e. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of other property of the defendants up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the names of **Drake, Crawford, Day, R. Graham, T. Graham,** ████████████

103.    By virtue of the commission of the offenses alleged in this indictment, any and all interest the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) and 28 U.S.C. § 2461(c).

104.    All pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) and 28 U.S.C. § 2461(c), and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C. § 982(b)(1).

A TRUE BILL

_____
GRAND JURY FOREPERSON

JAY R. COMBS
UNITED STATES ATTORNEY

_____        _____Feb. 5, 2026_____
REYNALDO P. MORIN                       Date
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 1:25-CR00038 |
| | § | JUDGE CRONE |
| DAVID DRAKE aka RILEY GRAHAM (1) | § | |
| BROOKE CRAWFORD (2) | § | |
| MARK DAY (3) | § | |
| RIAN GRAHAM (4) | § | |
| TROI GRAHAM (5) | § | |
| ███████████ | § | |
| ███████████ | § | |
| | § | |

## NOTICE OF PENALTY

### COUNTS 1-6

VIOLATION:   18 U.S.C. § 1349: Conspiracy to Commit Bank Fraud & Wire Fraud
18 U.S.C. § 1344: Bank Fraud

PENALTY:   Imprisonment of not more than thirty (30) years; the greater of a fine not to exceed $1,000,000, a fine not to exceed two times the gross gain to the Defendant, or a fine not to exceed two times the loss to the victim, or both such imprisonment and fine; and a term of supervised release of not more than five (5) years.

SPECIAL ASSESSMENT: $100.00

### COUNTS 7-17

VIOLATIOIN:   18 U.S.C. § 1343
Wire Fraud

PENALTY:   Imprisonment of not more than twenty (20) years; a fine not to exceed $250,000, or twice the pecuniary gain to the

defendant or loss to the victim; or both imprisonment and a fine; and a term of supervised release of not more than three (3) years. If the violation involves any benefit authorized in connection with a presidentially declared major disaster or emergency or affects a financial institution, the defendant may receive imprisonment of not more than thirty (30) years; a fine not to exceed $1,000,000.00, or twice the pecuniary gain to the defendant or loss to the victim; or both imprisonment and a fine; and a term of supervised release of not more than five (5) years.

SPECIAL ASSESSMENT: $100.00 each count

## COUNT 18

VIOLATION:            18 U.S.C. § 1956(h): Conspiracy to Commit Money Laundering

PENALTY:            Imprisonment of not more than twenty (20) years; a fine not to exceed $500,000, or twice the value of the property involved in the transaction, whichever is greater; or both imprisonment and fine; and a term of supervised release of not more than three (3) years.

SPECIAL ASSESSMENT: $100.00

## COUNT 19

VIOLATION:            18 U.S.C. § 1957: Money Laundering

PENALTY:            Imprisonment of not more than ten (10) years; a fine not to exceed $250,000, or not more than twice the amount of criminally derived property involved in the transaction; or both imprisonment and fine; and a term of supervised release of not more than three (3) years.

SPECIAL ASSESSMENT: $100.00